# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MICHAEL MCNEIL,

     Plaintiff

v.

WILLIAM GITTERE, et al.,

     Defendants

Case No.: 3:20-cv-00668-APG-CSD

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 15, 21

     This Report and Recommendation is made to the Honorable Andrew P. Gordon, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

     Before the court is Defendants' motion for summary judgment. (ECF Nos. 15, 15-1 to 15-16, manual filing at ECF No. 16.) Plaintiff filed a response (ECF No. 20), and Defendants filed a reply (ECF No. 22). Also before the court is Plaintiff's cross-motion for summary judgment (ECF No. 21)[1], to which Defendants filed a response (ECF No. 23). Plaintiff did not file a reply.

     After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part, and that Plaintiff's motion be granted in part and denied in part.

## I. BACKGROUND

     Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 4.) The

---

[1] Plaintiff was given leave to belatedly file his cross-motion. (ECF No. 26.)

1   events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP).

2   (*Id.*)

3        The court screened Plaintiff's complaint and allowed him to proceed with a Fourteenth

4   Amendment due process claim against defendants Roman, Homan, Allred, O'Donnell, Gittere,

5   and Wickham. This claim is based on allegations that he was deprived of due process in

6   connection with a disciplinary proceeding because: his notice of disciplinary charges was

7   deficient because it did not advise him what intoxicant he was being charged with possessing or

8   selling; he never learned what evidence the prison had against him; and he was unable to present

9   evidence and witnesses in support of his defense. In addition, he alleges he appealed the findings,

10  but Gittere and Wickham failed to rectify the situation.[2]

11       Defendants move for summary judgment, arguing: (1) Defendants did not violate

12  Plaintiff's due process rights; (2) O'Donnell, Gittere and Wickham did not personally participate

13  in any alleged constitutional violation; and (3) Defendants are entitled to qualified immunity.

14       In his response and cross-motion, Plaintiff argues: (1) his due process rights were

15  violated because he was not allowed to view the evidence being used against him or call

16  witnesses and there was no real safety and security risk to justify these decisions; (2) the record

17  does not reflect the evidence relied upon in finding Plaintiff guilty; (3) Gittere and Wickham

18  were personally involved in denying his due process rights because they were assigned to

19  respond to his disciplinary appeal; and (4) Defendants are not entitled to qualified immunity.

20

21

22

23
___
[2] Both parties reference an argument that the disciplinary finding was or was not supported by "some evidence;" however, Plaintiff was not allowed to proceed on screening with such a claim. Therefore, the court will not address these arguments.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

1  determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

2  *Anderson*, 477 U.S. at 249.

3       In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

4  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

5  come forward with evidence which would entitle it to a directed verdict if the evidence went

6  uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

7  the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

8  *Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

9  omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

10  defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

11  an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

12  party cannot establish an element essential to that party's case on which that party will have the

13  burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

14       If the moving party satisfies its initial burden, the burden shifts to the opposing party to

15  establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

16  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

17  dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

18  be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

19  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

20  (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

21  by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

22  U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

23

pleadings and set forth specific facts by producing competent evidence that shows a genuine

dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Facts**

The following facts are undisputed unless otherwise noted:

Plaintiff was served with a notice of charges written by defendant O'Donnell on

April 21, 2020, charging him with possession/sale of intoxicants. The notice of charges lists the

evidence as: "mail item held in evidence and recorded phone calls." The report of violation states

that on April 9, 2020, an incoming item of mail addressed to Plaintiff from "Got it Girls

Entertainment" was received at ESP. The envelope was red and had a printed white return

address label and addressee label. The enclosure tested negative for narcotics, but the addressee

label tested positive for cocaine. Additional investigation showed that this company was run by a

former inmate who was conspiring with multiple inmates, including Plaintiff and other

facilitators, using coded language to introduce narcotics and/or intoxicants into multiple NDOC

facilities through the mail system. In addition, the report states that recorded inmate phone calls

placed by Plaintiff to a phone number registered to "Infinity King" reference this mail being sent

in and the red envelopes used by the company. The report indicates that the item (presumably the

mail) was being held in the evidence vault at ESP and additional evidence was available *in

camera* within investigations. (ECF No. 15-8 at 8; O'Donnell Decl., ECF No. 15-14.) After

drafting the notice of charges, O'Donnell did not participate in Plaintiff's disciplinary

proceedings. (ECF No. 15-14.)

Just prior to being served with the notice of charges, Plaintiff was placed on "red tag

status" pending the outcome of the investigation and disciplinary proceedings. (ECF No. 15-6.)

"Red tag status is a temporary measure in which an inmate is confined in their cell except for medical and/or other emergency situations while the rest of the unit continues normal operation." This status is imposed on inmates "involved in serious incidents which pose an immediate threat to life, property, self, staff, other inmates or the security or orderly operations of the institution/facility[.]" (ECF No. 15-7 at 2.)

Defendant Roman held a preliminary hearing on April 21, 2020. Plaintiff entered a plea of not guilty. Roman relied on O'Donnell's report in referring the matter for a disciplinary hearing. Roman noted that a witness, Maurice Kelly, was requested. (ECF No. 15-8 at 7; Roman Decl., ECF No. 15-9 ¶ 8.) Roman conducted a search for Maurice Kelly which revealed that Kelly was a prior NDOC inmate who was released in 2004. (Roman Decl., ECF No. 15-9 ¶ 9.) Roman acknowledges Plaintiff also requested that the evidence used against him be brought to the disciplinary hearing. Roman advised Plaintiff that the evidence, "consisting of narcotics," would not be present at the hearing. (*Id*. ¶¶ 11-12.)

Plaintiff appeared before a three-person panel for his disciplinary hearing on April 24, 2020. The panel included defendants Homan and Allred as well as non-defendant Bodenheimer. (ECF No. 15-8 at 3.) Plaintiff entered a plea of not guilty to the charge. Plaintiff again requested that he be able to call Maurice Kelly as a witness, though Plaintiff said that Kelly "left the other day," and was not sure if the panel would be able to call or talk to him. Plaintiff did not know Kelly's number. Plaintiff said he expected Kelly to testify that inmates from another facility or housing unit were mad at him because he went there (to where they were housed) and made it back (to where he was currently housed) so quickly while they were still there. He said those inmates were trying to get "stuff" put in Plaintiff's name and he told them not to do that. Plaintiff went on to state that he was going to present something different

6

1   (himself), but then repeated that he thought inmates "over there" were trying to get him back to

2   where they were housed. Plaintiff then made his statement that he has received legitimate

3   mailings from this company, and he had no involvement with anyone sending in what turned out

4   to be narcotics. (ECF No. 16.)

5        Plaintiff was found guilty of the charge. The disciplinary hearing summary form lists the

6   evidence relied on as O'Donnell's report and sets forth the contents of O'Donnell's report from

7   the notice of charges. (ECF No. 15-8 at 4-5.) Plaintiff was sanctioned to 60 days of statutory time

8   forfeiture, a referral to the Attorney General for possible criminal prosecution, as well as loss of

9   canteen privileges for 90 days. (*Id*. at 6.) He was advised that he had 10 days to appeal the

10  findings to the warden using the inmate grievance process. (ECF No. 16, manual filing.)

11       According to Homan, the evidence supporting Plaintiff's guilty finding was identified in

12  the notice of charges, and the evidence was held in the evidence vault and *in camera* at ESP,

13  which inmates are not authorized to view due to safety and security concerns. Homan also states

14  they did not allow Plaintiff to call Maurice Kelly because Plaintiff did not provide an inmate

15  number or contact information, and they believed the testimony would be hearsay and did not

16  have any bearing on the case. (ECF No. 15-15.)

17       On April 27, 2020, Plaintiff's "Red Tag" status was lifted, and he was cleared for general

18  population housing. (ECF No. 15-6.)

19       In accordance with NDOC policy[3] and the disciplinary hearing officer's instruction,

20  Plaintiff immediately initiated a grievance appealing the disciplinary finding. (ECF No. 15-12.)

21

22  [3] Administrative Regulation (AR) 707.1 provides that an inmate found guilty at a disciplinary hearing may appeal the decision to the warden via the grievance process within 10 days. (ECF

23  No. 15-10 at 22-23.) If an inmate does not agree with the warden's response to the disciplinary appeal at the initial level of appeal, the inmate appeal at the second level via the inmate grievance process. (*Id*. at 23.)

1    In his first level grievance, Plaintiff asserted that he was found guilty with evidence that
2  was neither in his notice of charges nor presented at the disciplinary hearing, depriving him of
3  the opportunity to prepare his defense. He also asserted that there was no evidence to support the
4  guilty finding. (ECF No. 15-12 at 5-7.) Gittere, who was the warden at ESP at the time,
5  responded to the first level grievance/disciplinary appeal on May 7, 2020. Gittere found there
6  was sufficient evidence to support the guilty determination. He also said that formal rules of
7  evidence do not apply to disciplinary hearings, and the reliability and relevance of evidence is
8  within the discretion of the hearing officers. (*Id*. at 8.)

9    Plaintiff appealed Gittere's findings in a second level grievance. (*Id*. at 2, 4.) He again
10 asserted that he should have been presented with all of the evidence against him so he could
11 marshal all of the facts to prepare his defense. Wickham responded to the second level
12 grievance/disciplinary appeal, and he agreed with Gittere that there was sufficient evidence to
13 support the guilty finding. (*Id*. at 3.)

14 **B. Fourteenth Amendment Due Process and Disciplinary Hearings**

15    The Fourteenth Amendment provides, "[n]o State shall … deprive any person of life,
16 liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. To invoke its
17 protections, an inmate "must establish that one of these interests is at stake." *Wilkinson v. Astrue*,
18 545 U.S. 209, 221 (2005). Once the plaintiff has established one of these interests is at stake, the
19 court's analysis turns to whether the inmate suffered a denial of adequate procedural protections.
20 *Biggs v. Terhune*, 334 F.3d 910, 913 (9th Cir. 2003) (citations omitted).

21    Defendants do not dispute that a liberty interest was implicated in connection with the
22 disciplinary action taken against him Plaintiff. The question, then, is whether he was denied
23 applicable procedural protections.

8

1    "The Supreme Court established in *Wolff v. McDonnell* that there are procedural due

2  process rights that a prisoner must be afforded in the context of a prison disciplinary proceeding

3  prior to being deprived of a protected liberty interest." *Melnik v. Dzurenda*, 14 F.4th 981, 985

4  (9th Cir. 2021) (citing *Wolff*, 428 U.S. 539, 555-72 (1974)).

5    "Prison disciplinary proceedings are not part of a criminal prosecution, and the full

6  panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 428 U.S. at 556

7  (citation omitted). Instead, when an inmate faces disciplinary charges, due process requires that

8  the inmate receive: (1) written notice of charges at least 24 hours before his disciplinary hearing,

9  so he may prepare his defense; (2) a written statement by the hearing officer of the evidence

10  relied upon and the reasons for taking disciplinary action; (3) the right to call witnesses in his

11  defense, when permitting him to do so would not be unduly hazardous to institutional safety or

12  correctional goals; and (4) legal assistance if the inmate is illiterate or the issues presented are

13  legally complex. *Id.* at 556.

14    **1. Notice of Charges**

15    Plaintiff alleges that the notice of charges was deficient because it did not advise him

16  what intoxicant he was being charged with possessing or selling. However, the notice of charges

17  clearly states that the white addressee label tested positive for cocaine.

18    As a result, Defendants' motion for summary judgment should be granted and Plaintiff's

19  motion should be denied insofar as Plaintiff alleges his due process rights were violated because

20  the notice of charges did not advise him of what intoxicant he was being charged with possessing

21  or selling.

22

23

1      **2. Witnesses**

2         The right to call witnesses in a prison disciplinary proceeding is a qualified right. It is

3 "necessarily circumscribed by the penological need to provide swift discipline in individual

4 cases." *Ponte v. Real*, 471 U.S. 491, 495 (1985). The right "is additionally circumscribed by the

5 very real dangers in prison life which may result from violence or intimidation directed at either

6 other inmates or staff." *Id.* An inmate's right to call witnesses can be denied if granting the

7 request would be "unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S.

8 at 556.

9         "Jail officials need not provide inmates an unfettered right to call witnesses, but they

10 must make the decision whether to allow witnesses on a case-by-case basis, examining the

11 potential hazards that may result from calling a particular person." *Serrano v. Francis*, 345 F.3d

12 1071, 1079 (9th Cir. 2003) (citing *Mitchell v. Dupnik*, 75 F.3d 517, 525 (9th Cir. 1995)).

13         The disciplinary hearing officer should "state its reasons for refusing to call a witness,

14 whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases,"

15 *Wolff*, 418 U.S. at 556, "either by making the explanation a part of the 'administrative record' in

16 the disciplinary proceeding, or by presenting testimony in court if the deprivation of a 'liberty'

17 interest is challenged because of that claimed defect in the hearing." *Ponte,* 417 U.S. at 497.

18 "[A]s long as the reasons are logically related to preventing undue hazards to 'institutional safety

19 or correctional goals,' the explanation should meet the due process requirements as outlined in

20 *Wolff*." *Id*.

21         The Ninth Circuit has upheld the denial of calling a witness where the testimony would

22 be repetitive and when the hearing officer accepts the inmate's representation of what the inmate

23 would testify to. *See Bostic v. Carlson*, 884 F.2d 1267, 1271 (9th Cir. 1989), *overruled on other*

1  *grounds by Nettle v. Grounds*, 830 F.3d 922 (9th Cir. 2016); *Zimmerlee v. Keeney*, 831 F.2d 183,

2  188 (9th Cir. 1987).

3         Plaintiff requested to present Maurice Kelly as a witness. (ECF No. 15-8 at 5, 7; Roman

4  Decl., ECF No. 15-9 ¶ 8; ECF No. 16.)

5         Roman conducted a search of records using NDOC's Nevada Offender Information

6  Tracking System (NOTIS) for Maurice Kelly, which revealed that Kelly was a prior inmate who

7  had been released in 2004, and he had never been housed at ESP. (*Id*. ¶ 9.) In addition, defendant

8  Homan states that Plaintiff's request to call Kelly as a witness was declined because Plaintiff

9  could not provide an inmate number or other contact information for the witness, and the hearing

10 committee believed the testimony would be hearsay and did not have any bearing on the case.

11 (Homan Decl., ECF No. 15-15 ¶¶ 12-13.)

12        Defendants have identified legitimate reasons for refusing to call Kelly as a witness:

13 Plaintiff could not provide contact information for Kelly (and Plaintiff himself admitted Kelly

14 had left and they may not be able to call him); Kelly was a former NDOC inmate, who had been

15 discharged in 2004, and he had never been housed at ESP. In addition, it is plainly evident from

16 the recording of the hearing that the testimony Plaintiff hoped to elicit from Kelly was repetitive

17 of testimony Plaintiff gave: that he was being framed by other inmates who were mad at him for

18 other circumstances.

19        Plaintiff argues in his response and cross-motion that his due process rights were violated

20 because he claims Roman lied to him about whether other inmates were charged with this

21 offense, and if he had been told the truth, he would have called those inmates as witnesses.

22 Plaintiff does not present any evidence, in a declaration or otherwise, that he told Roman (at the

23 preliminary hearing) or Homan or Allred (at the disciplinary hearing) that he wanted to call any

other inmates as witnesses. According to the evidence before the court, the only witness he

requested to call was Maurice Kelly. In any event, Defendants assert that whether other inmates

were charged with the same thing was not relevant to whether *Plaintiff* was guilty of introducing

intoxicants into the facility through the mail.

For these reasons, Defendants' motion for summary judgment should be granted, and

Plaintiff's motion should be denied to the extent Plaintiff alleges his due process rights were

violated by not allowing him call witnesses at his disciplinary hearing.

**3. Evidence**

The evidentiary aspect of Plaintiff's due has two components: (1) whether he had access

to evidence to prepare his defense, and (2) whether he was advised of the evidence that

supported the disciplinary determination against him.

**a. Access to Evidence to Prepare his Defense**

The case of *Melnik v. Dzurenda,* 14 F.4th 981 (9th Cir. 2021), is instructive. Melnik was

also a prisoner within NDOC, and he was charged with unauthorized use of the prison's mail

system after another inmate anonymously told the prison that Melnik was using the mail system

to smuggle drugs into the prison. The prison intercepted two envelopes addressed to Melnik that

contained drugs in secret compartments within the letters. After he was notified of the charges,

Melnik asked to see the envelopes or copies of the envelopes, but his requests were denied or

ignored. The envelopes and information about their contents were the only evidence presented to

support the charges against Melnik at his disciplinary hearing. Melnik claimed he had been

framed by other inmates, but he was found guilty. *Melnik*, 14 F.4th at 984.

The Ninth Circuit determined the defendants in *Melnik* were not entitled to qualified

immunity. This was because Melnik "had a constitutional right to access the envelopes used as

12

evidence against him in the prison disciplinary hearing (or copies thereof) in preparing [his] defense." *Id*. at 985. In coming to this conclusion, the panel relied on *Wolff*, which held that an "'inmate facing disciplinary proceedings should be allowed to … present documentary evidence in his defense when permitting him to do so w[ould] not be unduly hazardous to institutional safety or correctional goals.'" *Id*. (quoting *Wolff*, 418 U.S. at 566). "If a prisoner must be allowed to present evidence in his defense, it necessarily follows that he must have some right to prepare for that presentation." *Id*. "With no access to the evidence that will be presented against him, a prisoner could neither build a defense nor develop arguments and evidence to contest the allegations at the disciplinary hearing." *Id*.

As such, the right to "'present documentary evidence' in the prisoner's own defense must generally include the ability to obtain that documentary evidence in the first place." *Id*. at 986 (quoting *Wolff*, 418 U.S. at 566). "Similarly, if a prisoner is to be able to respond to evidence presented against him, as a general proposition he should be allowed to know what it is and to examine it, unless there is reason to the contrary." *Id*.

"A prisoner's right to access and prepare evidence for a disciplinary hearing is not unlimited nor unfettered." *Id*. "It may be limited by prison officials if they have a 'legitimate penological reason.'" *Id*. (quoting *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992)). "If granting a prisoner access to the requested evidence would 'be unduly hazardous to institutional safety or correctional goals,' access may be denied." *Id*. at 986-87 (quoting *Wolff*, 418 U.S. at 566). "The penological reason must be legitimate, though, not merely pretense or pretext. The denial of access may not be arbitrary as '[t]he touchstone of due process is protection of the individual against arbitrary action of government.'" *Id*. at 987 (quoting *Wolff*, 418 U.S. at 558).

1    The Ninth Circuit gave the following example: "labeling a document 'confidential'

2  without real confidentiality concerns is not a 'legitimate penological reason.'" *Id*. (citing *Piggie*

3  *v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003) (holding that refusing a prisoner access to a tape as

4  'consistent with the Department of Corrections procedure of keeping security tapes confidential,'

5  without more, is not a 'security reason' for withholding access)). Moreover, "administrative

6  efficiency is not an adequate justification for denying a prisoner access to evidence to be used in

7  forming his defense." *Id*. (citing *Bostic v. Carlson*, 884 F.2d 1267, 1273 (9th Cir. 1989),

8  *overruled on other grounds by Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (en banc)).

9    As with witnesses, "[p]rison officials may be required to provide an explanation when

10  they deny a prisoner access to evidence, either in the administrative record or through testimony

11  in court if the denial is challenged." *Id*. (citing *Zimmerlee v. Keeney*, 831 F.2d 183, 187 (9th Cir.

12  1987); *Ponte v. Real*, 471 U.S. 491, 497-500 (1985)). "Without such an explanation, a prison

13  official's decision to deny access would effectively be unreviewable by courts." *Id*. (citing *Ponte*,

14  471 U.S. at 498-500).

15    In Melnik's case, the Ninth Circuit concluded that he "had a constitutional right to see the

16  envelopes or copies of them, as they were evidence to be used in his prison disciplinary hearing."

17  *Id*. Melnik "requested the evidence with sufficient clarity," and "[n]o legitimate penological

18  reason was identified to justify the denial of access." *Id*. at 988.

19    Defendant Roman, who presided over Plaintiff's preliminary hearing on April 21, 2021,

20  admits that Plaintiff requested that "*the evidence used against him* be brought to the disciplinary

21  hearing." (Roman Decl., ECF No. 15-9 ¶ 11, emphasis added.) Roman advised Plaintiff,

22  however, that the rules of evidence do not apply in disciplinary hearings, and that the evidence,

23  "*consisting of narcotics*," would not be present at the hearing. (*Id*. ¶ 12, emphasis added.)

Plaintiff's complaint alleges that during the preliminary hearing, he requested that the unauthorized mail and positive test result be brought to the hearing for his review. (ECF No. 4 at 7 ¶ 16.) He also alleges that he told Roman he wanted the "additional evidence in the E.S.P. Vault, brought in as evidence and was told good luck getting that." (*Id*. ¶ 17.) In his response to Defendants' motion and his cross-motion, he states that he requested that "*all the evidence lodged against him* be presented at the disciplinary hearing." (ECF No. 20 at 9:22-24, emphasis added.)

Defendants do not dispute that Plaintiff requested to review the unauthorized mail and positive test result (*see* ECF No. 15 at 13:25-26, 14:2-4). However, there is a dispute regarding whether Plaintiff requested to review evidence of the phone recordings, and Defendants do not address the other communications that O'Donnell references in the notice of charges.

If Plaintiff requested *all of the evidence being used against him*, a jury could conclude under *Melnik,* that he was requesting to review not only the envelope with the address label and the presumptive positive drug test result, but also the recorded phone calls and other communications that O'Donnell referenced in the notice of charges. *Melnik*, 14 F.4th at 987 ("[t]he request need not be extremely detailed, particularly if the prisoner has no way of ascertaining or describing the precise form of evidence he seeks, but it should be sufficient to put the prison official on notice of what is sought."). On the other hand, a jury could conclude that Plaintiff did not request to review anything other than the unauthorized mail and positive test result.

In any event, Defendants argue there are various legitimate penological reasons why Plaintiff was denied access to the evidence: (1) the evidence contained narcotics, and inmates are not authorized to view or inspect narcotics due to obvious safety and security reasons; (2) the

1  evidence was held in camera and in the ESP evidence vault and inmates are not authorized to

2  view such items; and (3) evidence related to a criminal prosecution referral is to remain

3  confidential under AR 708.

4     AR 707.1 provides that the inmate is supposed to receive copies "of any evidentiary

5  documents" which are considered by the disciplinary hearing officer or committee, with some

6  exceptions such as when a confidential informant is used (which is not the case here); when the

7  documents are those that inmates are not allowed to possess (such as medical records); or when

8  there are documents an inmate is not allowed to access under AR 568.[4] (ECF No. 15-10 at 16.)

9     If the evidence consists of documents the inmate is not allowed to have in his possession,

10  but the inmate would be permitted to review the documents, "the inmate must be given the

11  opportunity to review the documents at the Disciplinary Hearing." (*Id*.) If the evidence consists

12  of documents the inmate is not permitted to have access to under AR 568, "to the extent possible,

13  the confidential information at issue should be redacted … and a redacted copy of the document

14  should be given to the inmate." (*Id*.) If redaction is not possible, there must be a record of that

15  determination. (*Id*.)

16     Defendant Homan, who was part of the disciplinary hearing panel, states that inmates are

17  not authorized to view evidence that is held in camera or in the evidence vault at ESP due to

18  safety and security concerns. (Homan Decl., ECF No. 15-15 ¶¶ 8-9.) Here, the evidence

19  included the piece of mail which contained the addressee label that tested positive for cocaine,

20

21

22

23

---

[4] Under AR 568, an inmate is not allowed to access information which may endanger their physical, psychological or emotional well-being, endanger the safety of the institution/facility, disclose personal or confidential information of another person, or would impede, hinder or compromise an investigation or outcome of criminal or administrative proceedings.

1  and Plaintiff was not authorized to view or physically inspect the envelope and addressee label

2  because it contained narcotics. (*Id*. ¶¶ 10-11.)

3      The court accepts that there may be a valid security concern associated with Plaintiff

4  physically inspecting the original envelope containing the addressee label that tested positive for

5  cocaine; but prison officials could have easily taken a photograph of the envelope and the

6  addressee label as well as the enclosure for Plaintiff. Moreover, Defendants do not address why

7  they could not give Plaintiff a copy of the positive test result to review or how reviewing a copy

8  of the positive test result could impact safety and security. As in *Melnik,* Defendants have not

9  "identified anything that justified keeping [the mail item and presumptive positive test]

10  confidential from Plaintiff." *Melnik,* 14 F.4th at 988. Therefore, the court rejects Defendants'

11  argument that safety and security concerns justified the refusal to allow Plaintiff to review the

12  evidence.

13      The court will now address the argument that Plaintiff could not review the evidence

14  because it was in the evidence vault and *in camera.* In *Melnik,* which came out nearly a year

15  *before* Defendants filed their motion for summary judgment, the Ninth Circuit specifically

16  rejected the argument that Plaintiff could be denied access to the evidence being used against

17  him simply because NDOC decided to store it in the evidence vault. In *Melnik*, the defendants

18  admitted that "prison officials could still access materials in the vault, though approval by other

19  agencies may have been required." *Id*. Additionally, photographs had been taken of the

20  envelopes, which could have been shown to Melnik. *Id*. "Any difficulty in making copies once

21  the envelopes were in the vault was not a valid reason to deny Melnik access to them." *Id*.

22      Defendants' motion does not explain what it means to store evidence "*in camera,*"

23  however, according to O'Donnell's report, "*in camera*" means that such evidence was kept in the

Investigations Department, but not in the evidence vault. (*See* ECF No. 15-8 at 8.) O'Donnell

identifies the evidence that was stored in camera as follows: recorded phone calls between

Plaintiff and a phone number registered to "Infinity King;" other letters Plaintiff wrote to "Got It

Girls Entertainment" and "Infinity King" that contained coded language conspiring to have

contraband, narcotics, and intoxicants introduced to Plaintiff through the mail; and photos of the

presumptive positive test results from the mail item. (ECF No. 15-14 ¶ 10.)

   The Ninth Circuit's reasoning with respect to the evidence vault applies with equal, if not

more, force to the evidence held *in camera*. As was noted above, Defendants provide no

legitimate reason for not providing Plaintiff with a copy or photo of the presumptive positive

test. There is an issue of fact as to whether Plaintiff requested he be able to review the recorded

phone calls or other letters O'Donnell references in the notice of charges. If Plaintiff did request

to review it, thus far, Defendants have not identified any legitimate penological reason why

Plaintiff could not listen to or be provided with a copy of a transcript of the recorded calls or the

other letters O'Donnell references.

   Finally, AR 708.01 provides that "[a]ll evidence, documents, and information related to

criminal prosecution referrals are confidential until such time as Deputy Attorney General, other

prosecutor, or the court determines they are subject to disclosure." (ECF No. 15-16 at 2.) The

Ninth Circuit also rejected the same argument made by the defendants in *Melnik.* The court

concluded: "the fact that a matter could possibly be referred for criminal prosecution cannot

logically serve as a valid basis to keep from a prisoner charged with a disciplinary violation all

evidence related to the alleged violation." *Id*. at 989. If this were the case, "then prisons could

avoid any obligations under *Wolff* by noting a possibility of referral for prosecution." *Id*. Having

made the decision to proceed with the prison disciplinary proceeding, "they could not withhold

all information about the incident from the prisoner based only on the possibility of a future

criminal prosecution." *Id.*

In sum, there is a triable fact as to whether Plaintiff requested to review the call

recordings or other communications O'Donnell references in the notice of charges. Therefore,

both Plaintiff's and Defendants' motions for summary judgment should be denied insofar as

Plaintiff alleges he was denied due process with respect to these items of evidence, and this

aspect of his claim should proceed to trial. If a jury concludes Plaintiff did not request to review

these items, then it need not reach the legitimate penological reason issue.

There is no dispute that Plaintiff was denied the opportunity to review the envelope with

the addressee label (or a photograph of it) and the presumptive positive test (or a copy of it), and

Defendants have not set forth a legitimate penological reason justifying this refusal. Therefore,

Defendants' motion for summary judgment should be denied, and Plaintiff's motion should be

granted, insofar as Plaintiff alleges his due process rights were violated in this regard. This

aspect of his claim should proceed to trial only with respect to damages.

### b. Evidence Supporting the Disciplinary Determination

The disciplinary hearing form lists the evidence relied on for the hearing as the

"Officer[']s (O'Donnell's) report," and then includes verbatim the contents of O'Donnell's

report. O'Donnell's report, in turn, describes the red envelope with the white addressee label that

tested positive for cocaine; coded communications between inmates, including Plaintiff, and

"Got It Girls Entertainment" (and the former inmate running it);, and recorded inmate phone

calls between Plaintiff and a phone number registered to "Infinity King." (ECF No 15-8 at 4-5.)

The last line of the report states: "This item is held in the evidence vault at Ely State Prison.

Additional evidence is available in camera within Investigations." (ECF No. 15-8 at 8.)

According to O'Donnell's declaration, the other evidence kept *in camera* in Investigations included: the recorded phone calls, and other letters Plaintiff wrote to "Got it Girls Entertainment" and "Infinity King" containing coded language to have narcotics and intoxicants introduced into the prison through the mail, as well as the presumptive positive test result. (O'Donnell Decl., ECF No. 15-14 ¶ 10.) Therefore, it appears that Plaintiff was sufficiently advised of the evidence relied upon in connection with the notice of charges, preliminary hearing as well as the disciplinary hearing.

Defendants' motion for summary judgment should be granted and Plaintiff's motion should be denied insofar as Plaintiff's claim is based on allegations that Plaintiff was not sufficiently advised of the evidence relied upon in the disciplinary hearing.

## C. Personal Participation

"42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]" *Id*. (citations omitted); *see also Hines v. Yousef*, 914 F.3d 1218, 1228 (9th Cir. 2019) ("inmates must show that each defendant personally played a role in violating the Constitution").

### 1. O'Donnell

According to her declaration, O'Donnell drafted the notice of charges against Plaintiff, but she did not participate in any of the *disciplinary proceedings* against Plaintiff. (O'Donnell Decl., ECF No. 15-14 ¶ 11.)

1    Plaintiff's claim is that he was deprived of due process in connection with his

2  *disciplinary proceedings*. Therefore, summary judgment should be granted in O'Donnell's favor

3  based on a lack of personal participation in any constitutional violation.

4    **2. Gittere and Wickham**

5    It is undisputed that Gittere and Wickham responded to Plaintiff's disciplinary appeals,

6  where he claimed he was not allowed to see the evidence against him to prepare his defense.

7  Gittere and Wickham both acknowledged Plaintiff's claims, yet both denied Plaintiff's

8  disciplinary appeal without specifically addressing the fact that he was not given access to the

9  evidence to prepare a defense in his disciplinary hearing. (ECF No. 15-12 at 2-8.)

10    Under AR 707.1, they could have reversed the disciplinary committee's decision;

11 returned the decision back to the committee for further proceedings, or modified the charges

12 and/or sanctions imposed. (ECF No. 15-10 at 22-24.) Therefore, they were not just grievance

13 responders in the sense that they merely responded to a grievance about an event that already

14 occurred and for which they could provide no remedy. In other words, NDOC's own regulations

15 made them a part of the disciplinary process and they had the ability to intervene and remedy the

16 alleged deprivation of due process. Therefore, Gittere and Wickham should not be granted

17 summary judgment on the basis that they did not personally participate in any constitutional

18 violation.

19 **D. Qualified Immunity**

20    Defendants argue they are entitled to qualified immunity because they did not violate a

21 constitutional right, and they were not on notice of any clearly established constitutional right.

22    The court is recommending that Plaintiff be granted summary judgment insofar as he

23 alleges that his due process rights were violated when he was denied access to the mail

containing the addressee label as well as the presumptive positive test result without any legitimate penological reason. The court has also recommended denying both motions for summary judgment insofar as Plaintiff alleges he was denied due process when he was not given the opportunity to access the other evidence (the recorded phone calls or other letters) because there is an issue of material fact as to whether Plaintiff requested to review these items. As such, the court need only address qualified immunity as to these aspects of Plaintiff's due process claim.

"Defendants are entitled to qualified immunity if (1) the alleged conduct did not violate a constitutional right or (2) that right was not clearly established at the time of the alleged violation." *Melnik*, 14 F.4th at 985 (citing *Wood v. Moss*, 572 U.S. 744, 757 (2014)).

The court has determined that Plaintiff's due process rights were violated with respect to the mail containing the addressee label and the presumptive test and that no legitimate penological purpose was put forward to justify this deprivation. As to the other evidence, if the facts are taken in the light most favorable to Plaintiff, a jury could reasonably conclude Defendants denied him the opportunity to review this evidence without providing a legitimate penological purpose. *Melnik* held it was clearly established that a prisoner has a general right to access evidence to be used against him in a disciplinary hearing unless the refusal is supported by a legitimate penological purpose. This forecloses Defendants' qualified immunity argument.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order as follows:

Defendants' motion for summary judgment (ECF No. 15) should be **GRANTED**:

(1) Insofar as Plaintiff alleges his due process rights were violated because his notice of charges did not advise him of what intoxicant he was charged with selling or possessing;

(2) Insofar as Plaintiff alleges his due process rights were violated by not allowing him to call witnesses at his disciplinary hearing;

(3) Insofar as Plaintiff alleges his due process rights were violated by not giving him notice of the evidence relied upon in the disciplinary hearing; and

(4) Insofar as Plaintiff alleges that O'Donnell violated his due process rights;

Defendants' motion for summary judgment (ECF No. 15) should be **DENIED**:

(1) Insofar as Plaintiff alleges his due process rights were violated when he was denied the opportunity to review the mail item including the addressee label as well as the presumptive positive test;

(2) Insofar as Plaintiff alleges his due process rights were violated when he was denied the opportunity to review the recorded phone calls and other letters referenced in the notice of charges;

(3) Insofar as Defendants argue that Wickham and Gittere did not personally participate in any constitutional violation; and

(4) Insofar as Defendants argue that they are entitled to qualified immunity.

Plaintiff's motion for summary judgment (ECF No. 21) should be **GRANTED** insofar as he alleges his due process rights were violated when he was denied the opportunity to review the mail item including the addressee label as well as the presumptive positive test.

Plaintiff's motion for summary judgment (ECF No. 21) should be **DENIED**:

(1) Insofar as Plaintiff alleges his due process rights were violated because his notice of charges did not advise him of what intoxicant he was charged with selling or possessing;

(2) Insofar as Plaintiff alleges his due process rights were violated by not allowing him call witnesses at his disciplinary hearing;

(3) Insofar as Plaintiff alleges his due process rights were violated by not giving him notice of the evidence relied upon in the disciplinary hearing.

    This matter should proceed to trial with respect to:

(1) Damages with respect to his claim that his due process rights were violated when he was denied the opportunity to review the mail item including the addressee label as well as the presumptive positive test; and

(2) Plaintiff's claim that his due process rights were violated when he was denied the opportunity to review the recorded phone calls and other letters referenced in the notice of charges. If a jury determines that Plaintiff did not request to review these items, then under *Melnik*, it need not proceed further. If a jury determines Plaintiff did request to review these items, then the jury should determine whether there was a legitimate penological purpose for denying Plaintiff's review of these items, and if not, what damages Plaintiff is entitled to recover.

    The parties should be aware of the following:

    1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: January 10, 2023

_____
Craig S. Denney
United States Magistrate Judge